IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ETISON LLC d/b/a CLICKFUNNELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 24-502 (CFC) |
| | ) |
| HIGHLEVEL, INC., | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| Defendant. | ) |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Etison LLC d/b/a ClickFunnels hereby alleges for its Amended Complaint for Patent Infringement against Defendant HighLevel, Inc. as follows:

## THE PARTIES

1. Plaintiff Etison LLC d/b/a ClickFunnels ("ClickFunnels") is a limited liability company organized under the laws of Idaho, with its principal place of business located at 3443 W. Bavaria Street, Eagle, ID 83616.

2. ClickFunnels developed and markets a cloud-based, software-as-service platform called "ClickFunnels" that people can use to create websites optimized to maximize sales funnel performance.

3. On information and belief, Defendant HighLevel, Inc. ("HighLevel") is a corporation organized under the laws of Delaware with its principal place of business located at 400 North Saint Paul Street, Suite 920, Dallas, TX 75201.

4. HighLevel markets a software-as-service platform that competes with the ClickFunnels platform.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the Patent Laws of the United States of America, Title 35, United States Code §§ 100, *et seq*.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over HighLevel because, on information and belief, HighLevel is a corporation organized and existing under the laws of the State of Delaware with a registered agent in the State of Delaware.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because, on information and belief, HighLevel is a corporation organized and existing under the laws of the State of Delaware.

## THE PATENTS-IN-SUIT

9. The U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 10,846,357 (the "'357 Patent") titled "Website Creation System for Creating Websites Having at Least One Series of Directional Webpages and Related Methods" on November 24, 2020. A true and correct copy of the '357 Patent is attached hereto as Exhibit A.

10. The U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 11,361,047 (the "'047 Patent") titled "Website Creation System for Creating Websites Having at Least One Series of Directional Webpages and Related Methods" on June 14, 2022. A true and correct copy of the '047 Patent is attached hereto as Exhibit C.

11. The '047 Patent is a continuation of the '357 Patent so the two patents have identical specifications with the exception of a paragraph in the '047 Patent explaining it is a continuation of the '357 Patent. (*See* '047 Patent, 1:9-12).

12.     The patents-in-suit relate generally to "a website creation system having at least one series of directional webpages and related methods." ('357 Patent, 1:8-10; '047 Patent, 16-18).

## THE PRIOR ART AND THE CLAIMED INVENTIONS

13.     The patents-in-suit describe problems with and disadvantages of prior art systems and methods for creating websites: "one who may want to create a website for selling a product and/or service in hopes of yielding favorable results (e.g., sales, opt-ins, etc.) must often hire two or more different companies to develop and generate different portions of the website." ('357 Patent, 1:15-19; '047 Patent, 1:23-27).

14.     The patents-in-suit describe one of the benefits of the claimed inventions over prior art systems and methods for creating websites: "Because the website creation system of the present disclosure enables a user to create, within a single system, a website that includes at least one series of directional webpages ordered and designed to entice particular user interaction, the website creation system is advantageous over conventional website creation systems." ('357 Patent, 3:18-23; '047 Patent, 3:26-31).

15.     The patents-in-suit describe many different categories and types of directional webpages that can be provided to website designers. (*See* '357 Patent, 8:1-12:34; '047 Patent, 8:10-12:42; *see also* '357 Patent, 12:48-15:47; '047 Patent, 12:57-15:58).

16.     The patents-in-suit describe the technical solutions that the claimed inventions provide over prior art systems and methods for creating websites: "because the [claimed] website creation system enables a user to create a website while working with a single system instead of multiple developers and systems, the [claimed] website creation system reduces required

processing power, memory, and communication resources needed to facilitate creating websites." ('357 Patent, 3:24-28; '047 Patent, 3:32-36).

17. Before the invention of the claimed subject matter of the patents-in-suit, another problem with traditional websites related to how users interacted with those websites. In one traditional form of e-commerce websites, users were presented with a virtual catalog from which users could select merchandise for purchase, enter credit card information, and make a purchase. The users were largely left on their own to search for the types of products that were of interest to the user.

18. Traditional e-commerce websites also required repeated data transmissions between the user's computer and the server that hosted the website. These repeated transmissions imposed a "cost" in terms of computing power, storage space in a computer's memory or a server's memory, and time.

19. The patents-in-suit explain that the technical solutions provided by the claimed inventions results "in less data transfer and data bandwidth usage for a computer/communication system. In other words, the [claimed] website creation system results in less required processing power and communication bandwidth in comparison to conventional systems." ('357 Patent, 3:29-33; '047 Patent, 3:37-41).

20. ClickFunnels advertises and promotes one of the advantages of its patented technical solutions on its website when it encourages its customers and potential customers to "[e]xperience insanely fast page loading speeds, which means a whole lot more conversions and sales." (*See* https://www.clickfunnels.com/, under the heading "With FunnelHubs, you can..." (accessed on July 1, 2024)).

21. The patents-in-suit explain that the technical solutions provided by the claimed inventions provide an additional, distinct benefit "in comparison to conventional systems" because the claimed inventions "may be a more appropriate system for mobile devices." ('357 Patent, 3:33-36; '047 Patent, 3:41-44).

22. The claimed inventions address long-felt but unsolved technical needs in the field of website creation.

23. The patents-in-suit are a result of the innovations made by the inventors named on those patents and, as described herein, contain limitations that, individually and/or collectively, are directed to inventive concepts that were unconventional and not well known or routine. These inventive concepts, as described and claimed in the patents-in-suit and as described herein, have resulted in the success of the ClickFunnels platform that incorporates the claimed inventions.

## CLICKFUNNELS AND ITS PLATFORM

24. ClickFunnels has invested substantial resources in developing, refining, and optimizing its software platform since its inception in 2014.

25. Although there are many details about and features of the patents-in-suit and the ClickFunnels platform, for the purposes of this amended complaint, ClickFunnels identifies two general aspects to the patents-in-suit and the ClickFunnels platform: website creation and a user's experience with websites that are created using the technologies claimed in the patents-in-suit.

26. With regard to website creation, the ClickFunnels platform allows website developers to create "funnels" based on templates developed by ClickFunnels and provided on the ClickFunnels platform and then to deploy those funnels on the developers' websites.

27. In the physical world, a funnel is a structure that starts out as broad at the top and becomes narrow. The ClickFunnels platform uses this same concept and applies it to websites and

e-commerce with the goal being that the owner of the website can attract as many potential customers as possible for the products or services offered on that website (the broadest part of the funnel) and then, by using ClickFunnels technology, the website can provide the potential customers a series of directional webpages through which the potential customers can learn more about the product that is of interest to them (a narrower part of the funnel), the potential customers can purchase the products or services they know they already want (a still narrower part of the funnel), and the potential customers can be "funneled" to different webpages on the website to encourage them to take other actions such as purchasing other products offered on the website (an even narrower part of the funnel).

28. ClickFunnels has described its "funnels" as being like a "digital road" that brings potential customers or users to a website and once the users are there, their online activity is "funneled" in certain directions based on the user's profile information and/or the user's activity or actions on the website.

29. One example of a "funnel" that is available on the ClickFunnels platform is a "sales funnel." Using the ClickFunnels platform, website designers have the ability to create a website by constructing a series of directional webpages from templates provided by the ClickFunnels platform. For example, the designer can select a "storefront" template and continue adding templates to include landing pages, product pages, and payment and delivery pages with the order and content of the templates having been created by ClickFunnels based on psychology related to sales and marketing.

30. Through the use of pre-made templates that include a series of directional webpages, the resulting website will allow both the user's local computer and the remote server hosting the website to use less computing power because the templates already have conditional

logic built in.  Because of the built-in logic, the website will respond in a pre-determined way to the user's selections on the website rather than having to analyze each of the user's actions one-by-one and determine possible responses to each of those actions which results in a reduction of computing power required at the user's local computer and at the remote server that hosts the website.

31. Some of the templates that are available to web designers on the ClickFunnels platform are static webpages, *i.e.*, pages that do not change from user to user.

32. The technical solution of using static pages saves computing power, computing time, and data transmission bandwidth because from one web browsing session to another by the same user, the same static pages can be loaded from a cache on the user's local computer rather than requiring the user's local computer to call for those pages again from a remote server and for that remote server to return those pages again to the user's computer.

33. The technical solution of using static pages also saves computing power, computing time, and data transmission bandwidth in the case of different browsing sessions by different users. In this instance, the same static pages can be loaded for all users once to a cache on the user's local computer and thereafter each user will have those pages readily available locally rather than requiring the user's local computer to call for those pages again from a remote server and for that remote server to return those pages again to the user's computer.

34. Another advantage of the technology disclosed in the patents-in-suit, which is employed by the ClickFunnels platform, is that a website developer can design and develop a website on the user's computer because a page editor is cached locally on the user's computer which allows the developer to make edits locally without any data transfers to a remote server until the developer has finished the design.  At that point the developer saves the website and it is stored

at a remote server located at ClickFunnels or a third-party's location. Based on this structure and organization of computer components, far less data transmission is required compared to prior systems and methods in which a developer would input changes to a website on the user's local computer, those changes would be transmitted in real time to a remote server, and the remote server would store those changes thereby requiring back-and-forth data transmission throughout the entire website development process.

35. The second general aspect of the patents-in-suit relates to a user's experience with websites that are created using the technologies claimed in the patents-in-suit and implemented on the ClickFunnels platform. In this regard, the patents-in-suit describe one technically advantageous way that a website developer can use "funnels" to respond to a user taking a certain action or by failing to take a certain action ('357 Patent, 3:57 to 4:6; '047 Patent, 3:65 to 4:14):

> Additional embodiments of the present disclosure include a website creation system for enabling a user (e.g., a system administrator) to create one or more response actions related to the user's created website. For instance, the user can customize the website to perform a response action in response to one or more triggering conditions correlating to one of more actions and/or attributes of one or more guests (e.g., visitors) of the website. As a non-limiting example, a response action may include sending a communication to a guest of the website based on the guest's status or number of followers within a social media network. Each of the response actions may include multiple specific ordered rules that enable automation of further tasks (e.g., sending communications to a guest in response to a guest's actions, adding the guest to broadcasts, tagging the guest, etc.). Furthermore, the multiple specific rules cause the website to perform the response actions in specific technological ways.

36. Using the ClickFunnels platform, a developer can create what the patents-in-suit describe as "response actions" (and what ClickFunnels calls "action funnels" or "follow-up funnels") that consist of rules that are automatically invoked by a website created with the

ClickFunnels platform and the patented technology based on a user's actions or inaction in relation to the website.

37.     As one example, if a user visits a website, clicks on a certain product, but then takes no further action or exits the website, the ClickFunnels platform that uses the claimed inventions provides an automatic way to treat that as a "trigger" which results in the website sending an email, text, or other type of communication to the user to remind the user to complete the purchase. (*See, e.g.*, '357 Patent, 20:31-34 ("[A] system administrator may set the events to include sending an email and/or SMS message to a guest when one of the triggers occurs, tagging the guest, adding the guest to a communication list, etc."); '047 Patent, 20:40-43 (same); '357 Patent, 25:23-64; '047 Patent, 25:51-26:28).

38.     By using "response actions" (as described in the example in the preceding paragraph and in other ways that a person of skill in the art would recognize), the ClickFunnels platform and the claimed inventions employ sets of specific, ordered rules that enable automation of tasks resulting in the technical advantage of reduced computing time and use of computer resources. In contrast, using traditional systems and methods, analytics would have to be run on a customer-by-customer basis to identify customers with products in their virtual "shopping carts," identify those products, determine the customer's email address, create an email to the customer based on the products in the customer's shopping cart, and send the email to the customer. All of these efforts would consume more computer processing power and time than the technology disclosed and claimed in the patents-in-suit and used in the ClickFunnels platform.

39.     As another example, using the technology disclosed and claimed in the patents-in-suit and used in the ClickFunnels platform, a website can be created so that if a user clicks on a certain product, enters payment and shipment information, and purchases that product, the website

can direct the user to another webpage.  If the user decides to make a purchase from that later page, the customer need not re-enter any payment or shipping information because the ClickFunnels platform retains the customer's payment and shipping information which not only saves the customer time but also saves on computing time and resources as well as reducing the bandwidth required for the transaction because data transmissions are reduced.

40. Another advantage of the technology disclosed in the patents-in-suit, which is employed by the ClickFunnels platform, is that if a user accesses or "browses" a website on one device (*e.g.*, a mobile phone) and views a product or service but does not make the purchase, the website could treat the failure to purchase a "triggering condition" whereby the user could be sent an email with a link to allow the user to complete the purchase.  The user can click on that link from any device, not just the device that the user initially used, and the browsing session would be re-initialized so that the user would not need to enter any additional information in order to complete the purchase.  This re-initialization saves on computing power, computing time, and communications bandwidth.

### HIGHLEVEL'S USE OF CLICKFUNNELS' PRODUCT AND HIGHLEVEL'S AWARENESS OF THE PATENTS-IN-SUIT AND ITS INFRINGEMENT

41. On information and belief, at least one of HighLevel's founders had an account with ClickFunnels from 2018 to 2022.

42. On information and belief, one or more employees or agents of HighLevel downloaded portions of the software that is part of the ClickFunnels platform and covered by one or more claims of the patents-in-suit.

43. On information and belief, one or more employees or agents of HighLevel used software that it obtained from the ClickFunnels platform in developing the HighLevel platform.

44. HighLevel has been aware of each of the patents-in-suit since at least April 23, 2024, when ClickFunnels' agent served the original "Complaint for Patent Infringement" on HighLevel. *See* D.I. 1, D.I. 6.

45. Notwithstanding HighLevel's knowledge of the patents-in-suit and ClickFunnels' infringement allegations, HighLevel has infringed and continues to infringe one or more claims of each of the patents-in-suit.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,846,357

46. ClickFunnels reasserts and incorporates herein by reference the allegations of Paragraphs 1-45 of this Amended Complaint as if fully set forth herein.

47. ClickFunnels is the owner by assignment of all right, title, and interest in and to the '357 Patent, including the right to recover for past infringement thereof.

48. HighLevel has in the past and continues to infringe, literally or under the doctrine of equivalents, at least Claim 1 of the '357 Patent by making, using, offering to sell, selling, and/or importing in this judicial district and elsewhere in the United States its "HighLevel" platform. A chart showing HighLevel's infringement of Claim 1 of the '357 Patent is attached hereto as Exhibit B.

49. ClickFunnels has sustained and continues to sustain damages as a direct and proximate result of HighLevel's infringement of the '357 Patent.

50. As a consequence of HighLevel's infringement of the '357 Patent, ClickFunnels is entitled to recover damages in the form of lost profits or, at a minimum, a reasonable royalty together with interest and costs pursuant to 35 U.S.C. § 284.

51. HighLevel became aware of the '357 Patent and its infringement of at least one claim thereof at least by April 23, 2024, but despite having actual knowledge of the '357 Patent, HighLevel has continued to infringe.

52. HighLevel's conduct makes this an exceptional case within the meaning of 35 U.S.C. § 285.

53. As a consequence of HighLevel's continued and future infringement of the '357 Patent as complained of herein, ClickFunnels is entitled to an injunction against HighLevel or royalties for HighLevel's infringement of the '357 Patent on a going-forward basis.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 11,361,047

54. ClickFunnels reasserts and incorporates herein by reference the allegations of Paragraphs 1-45 of this Complaint as if fully set forth herein.

55. ClickFunnels is the owner by assignment of all right, title, and interest to the '047 Patent, including the right to recover for past infringement thereof.

56. HighLevel has in the past and continues to infringe, literally or under the doctrine of equivalents, at least Claim 1 of the '047 Patent by making, using, offering to sell, selling, and/or importing in this judicial district and elsewhere in the United States its "HighLevel" platform. A chart showing HighLevel's infringement of Claim 1 of the '047 Patent is attached hereto as Exhibit D.

57. ClickFunnels has sustained and continues to sustain damages as a direct and proximate result of HighLevel's infringement of the '047 Patent.

58. As a consequence of HighLevel's infringement of the '047 Patent, ClickFunnels is entitled to recover past damages in the form of lost profits or, at a minimum, a reasonable royalty together with interest and costs pursuant to 35 U.S.C. § 284.

59.    HighLevel became aware of the '047 Patent and its infringement of at least one claim thereof at least by April 23, 2024, but despite having actual knowledge of the '047 Patent, HighLevel has continued to infringe.

60.    HighLevel's conduct makes this an exceptional case within the meaning of 35 U.S.C. § 285.

61.    As a consequence of HighLevel's continued and future infringement of the '047 Patent as complained of herein, ClickFunnels is entitled to an injunction against HighLevel or royalties for HighLevel's infringement of the '047 Patent on a going-forward basis.

## PRAYER FOR RELIEF

ClickFunnels respectfully requests that this Court enter judgment against HighLevel as follows:

A.    Adjudging that HighLevel has infringed one or more claims of the '357 Patent, directly or indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a);

B.    Adjudging that HighLevel has infringed one or more claims of the '047 Patent, directly or indirectly, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a);

C.    Awarding damages to be paid by HighLevel to ClickFunnels adequate to compensate for HighLevel's past infringement and any continuing or future infringement up until the date a judgment is entered, and in no event less than a reasonable royalty, in accordance with 35 U.S.C. § 284 in an amount to be determined at trial;

D.    Declaring this to be an exceptional case within the meaning of 35 U.S.C. § 285 and awarding ClickFunnels its reasonable attorneys' fees;

E. Enjoining Defendant and its officers, agents, servants, employees, and attorneys as well as all other persons who are in active concert or participation with any of them from infringement of the '357 Patent and the '047 Patent or ordering Defendant to pay post-judgment royalties to ClickFunnels for infringement of the '357 Patent and/or the '047 Patent on a going-forward basis at a rate to be determined at trial;

F. Awarding ClickFunnels pre-judgment and post-judgment interest on its damages at the maximum rate permitted by law;

G. Awarding ClickFunnels its costs and expenses in this action; and

H. Granting ClickFunnels such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

ClickFunnels demands a trial by jury on all claims and issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

John M. Hintz (admitted *pro hac vice*)
MAYNARD NEXSEN PC
The Fred F. French Building
551 Fifth Avenue, Suite 1600
New York, NY 10176
(646) 609-9280
jhintz@maynardnexsen.com

July 1, 2024

Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Plaintiff*
*Etison LLC d/b/a ClickFunnels*